JUSTICE GARMAN, dissenting: Less than three years ago, this court addressed the doctrine of forum non conveniens in Dawdy v. Union Pacific R.R. Co., 207 Ill. 2d 167 (2003). Dawdy was decided in the wake of First American Bank v. Guerine, 198 Ill. 2d 511 (2002), another forum non conveniens decision. In the present case, the appellate court denied defendants leave to appeal the circuit court’s denial of their motion to transfer venue from St. Clair County to Clinton County. We ordered the appellate court to reconsider its judgment in light of Dawdy and Guerine. In affirming the judgment of the circuit court on remand, the appellate court speculated that it would not have been “ordered to reconsider a venue transfer question in light of both Dawdy and Guerine if the supreme court did not think both decisions still represented good law.” 354 Ill. App. 3d 1103, 1109. Until today, Dawdy and Guerine did both represent good law, but the majority’s decision places this case directly at odds with Dawdy, significantly obscuring our forum non conveniens jurisprudence. Accordingly, I dissent. I. Divergence From Bawdy In Bawdy, the plaintiff, a resident of Greene County, was driving a tractor in Macoupin County when he collided with a truck operated by an employee of the Union Pacific Railroad Company (Union Pacific). Dawdy, 207 Ill. 2d at 169. The plaintiff filed a lawsuit against Union Pacific and its employee in the circuit court of Madison County alleging that the employee negligently operated the truck, that Union Pacific negligently failed to train and supervise the employee, and that Union Pacific negligently failed to ensure that attachments on the truck would not extend beyond the width of the vehicle when it was operated on public streets. Dawdy, 207 Ill. 2d at 169. The employee was a resident of Macoupin County. Dawdy, 207 Ill. 2d at 170. Union Pacific, a Delaware corporation with its principal place of business in Omaha, Nebraska, did business in both Macoupin County and Madison County and operated a facility in the latter. Dawdy, 207 Ill. 2d at 170. The 18 potential witnesses resided in various counties. Dawdy, 207 Ill. 2d at 170. The defendants filed a motion to transfer venue from Madison County to Macoupin County under the doctrine of forum non conveniens, which the circuit court denied. Dawdy, 207 Ill. 2d at 170. On appeal, the appellate court affirmed the judgment of the circuit court. Dawdy, 207 Ill. 2d at 171. In reversing, this court balanced the private and public interest factors relevant to the forum non conveniens analysis and concluded that the circuit court abused its discretion in denying the defendant’s motion to transfer. Dawdy, 207 Ill. 2d at 185. With respect to the private interest factors, we initially examined the relative ease of access to testimonial evidence. Dawdy, 207 Ill. 2d at 177. Two of the potential witnesses resided in Macoupin County, none resided in Madison County, and on the whole, the potential witnesses resided closer to Macoupin County than to Madison County. Dawdy, 207 Ill. 2d at 178. Therefore, we concluded that, insofar as ease of access to testimonial evidence was concerned, Macoupin County was a slightly more convenient venue than Madison County. Dawdy, 207 Ill. 2d at 178. We next turned to the possibility of viewing the premises of the accident. Dawdy, 207 Ill. 2d at 178. The appellate court apparently had given this factor no weight, concluding that although the accident occurred in Macoupin County, there was nothing in the record to indicate that a view of the accident site would be necessary. Dawdy, 207 Ill. 2d at 178. We emphasized that the convenience factor of viewing the premises of the accident “is not concerned with the necessity of viewing the site of the injury, but rather is concerned with the possibility of viewing the site, if appropriate.” (Emphases in original.) Dawdy, 207 Ill. 2d at 178. Accordingly, we determined that if the trial court were later to decide that viewing the accident site would be appropriate, it would not make sense for a jury composed of Madison County residents to travel to Macoupin County to do so. Dawdy, 207 Ill. 2d at 179. Finally, we assessed other practical considerations that would make trying the case easy, expeditious, and inexpensive. Dawdy, 207 Ill. 2d at 179. In doing so, we accorded “little weight” to the locations of the offices of the parties’ attorneys, which were situated in Madison County and neighboring St. Clair County. Dawdy, 207 Ill. 2d at 179. We also declined to accept the contention that since Madison County is adjacent to Macoupin County, Madison County conclusively could not be an inconvenient venue for the defendants. Dawdy, 207 Ill. 2d at 180. Turning to the public interest factors, we first examined court congestion. Dawdy, 207 Ill. 2d at 181. The 1998 annual report of the Administrative Office of the Illinois Courts indicated that there were 1,867 jury actions for damages in excess of $50,000 pending in Madison County, and only 137 comparable actions pending in Macoupin County. Dawdy, 207 Ill. 2d at 181. Moreover, the average time between filing and verdict for such actions was one year less in Macoupin County, at 17.3 months, than in Madison County, at 29.3 months. Dawdy, 207 Ill. 2d at 181. Thus, Madison County’s docket was significantly more congested than that of Macoupin County. Dawdy, 207 Ill. 2d at 181. Next, we discussed the nature and extent of local interests in deciding the controversy. Dawdy, 207 Ill. 2d at 181-82. The facts Union Pacific conducted business in Madison County and its employee maintained a post office box there were not dispositive of this aspect of the forum non conveniens analysis. Dawdy, 207 Ill. 2d at 182. Rather, we found it significant that the accident occurred in Macoupin County, not Madison County; that the plaintiff did not reside in Madison County; that the individual defendant did not reside in Madison County; that the individual defendant did reside in Macoupin County; that the witnesses were, in general, unconnected to Madison County, despite the fact some worked there; and that some of the witnesses resided in Macoupin County. Dawdy, 207 Ill. 2d at 183. Accordingly, we concluded that Madison County had “little or no interest” in trying the action, and that Macoupin County, on the contrary, had a “strong connection with and interest in” the action. Dawdy, 207 Ill. 2d at 183. Finally, we examined the relative propriety of imposing jury duty on the residents of Madison County and Macoupin County. Dawdy, 207 Ill. 2d at 183. With respect to this consideration, we concluded that Madison County residents should not be burdened with jury duty, given that the action did not arise in, and had no relation to, their county. Dawdy, 207 Ill. 2d at 183. Relatedly, we reasoned it would not be unfair to burden the residents of Macoupin County with jury duty, given Macoupin County’s significant interest in the dispute. Dawdy, 207 Ill. 2d at 183. After individually considering the private and public interest factors relevant to the forum non conveniens analysis, we concluded that the weight of the public interest factors “greatly” favored Macoupin County, and that the private interest factors favored it as well. Dawdy, 207 Ill. 2d at 184. We also noted that the deference we would accord to the plaintiff’s choice of venue was reduced, because he did not reside there, and his cause of action did not arise there. Dawdy, 207 Ill. 2d at 184. In light of these considerations, we held “the balance of factors strongly favor[ed] transfer to Macoupin County” (Dawdy, 207 Ill. 2d at 184), and the circuit court abused its discretion in denying the defendants’ motion to transfer venue (Dawdy, 207 Ill. 2d at 185). The majority disregards significant aspects of our analysis in Dawdy in affirming the circuit court’s denial of defendants’ motion to transfer in this cause. This disregard begins with its discussion of the private interest factors in the forum non conveniens analysis. Initially, the majority ignores Dawdy's conclusion that the possibility of viewing the accident site, not the necessity of doing so, is the relevant consideration in weighing this factor. Dawdy, 207 Ill. 2d at 178. As we noted in Dawdy, “the necessity or propriety of viewing the scene is a decision left within the discretion of the trial court.” Dawdy, 207 Ill. 2d at 179. The majority concludes that “a view of the accident site is not appropriate,” reasoning that the conditions alleged to have caused the accident no longer exist, so a jury view of the site as it existed on the date of the accident is not possible. 219 Ill. 2d at 448-49. This conclusion is not ours to make. It displaces the role of the trial court in determining the propriety of an accident view. The mere facts that the accident site no longer appears exactly as it did on the date of the accident and that plaintiff’s investigator has photographs and videotape of the accident site do not eliminate the possible usefulness of a jury view. Moreover, contrary to what the majority suggests, the investigator’s St. Clair County residency and the location of his investigation materials in St. Clair County are completely irrelevant to whether a jury view of the accident site might be appropriate. 219 Ill. 2d at 449. Next, in evaluating the relative ease of access to testimonial evidence, the majority fails to conduct a balanced analysis of the residency of potential witnesses. As mentioned, in Dowdy, we focused primarily on the facts that two of the potential witnesses resided in Macoupin County, none resided in Madison County, and on the whole, the potential witnesses resided closer to Macoupin County than to Madison County. Dowdy, 207 Ill. 2d at 178. In this case, the majority concludes that defendants “failed to show that trial in Clinton County would be more convenient than St. Clair County for most of the witnesses” (219 Ill. 2d at 449) without once mentioning that six witnesses identified by plaintiff in her answers to defendants’ interrogatories are Clinton County residents. These witnesses appear to be friends and relatives of the decedent with knowledge of his quality of life and neighbors of the decedent who were present at the scene of the accident. In addition, the deputy sheriff who investigated the accident site and prepared an accident report, and the plaintiff herself, both of whom defendants have identified as potential witnesses, are residents of Clinton County. Other potential witnesses with identities ascertainable from the record are scattered among several Illinois counties, Indiana, and Missouri. The Illinois witnesses include the decedent’s two initial emergency care physicians, who reside in Madison County and St. Clair County; plaintiff’s investigator, who resides in St. Clair County; the defendant division engineer, who resides in Macon County; the Illinois Commerce Commission inspector responsible for investigating the accident site; and the Illinois Commerce Commission administrator in charge of evaluating the inspector’s report. The Indiana witnesses include the defendant train conductor, who resides in Patoka, Indiana, and the defendant train engineer, who resides in Hazelton, Indiana. The Missouri witness is the medical examiner who performed an autopsy on the decedent in St. Louis, Missouri. Because we do not know the specific residences of all these witnesses, we cannot say for certain how far each would have to travel to testify in St. Clair County or Clinton County. However, a fair characterization of the locations of the potential witnesses mentioned thus far is that eight reside in Clinton County, two reside in St. Clair County, and the other nine would, on average, have to travel approximately the same distance to reach either Clinton County or St. Clair County. The remainder of the potential witnesses, whose identities are not ascertainable from the record, include physicians and hospital personnel who treated the decedent in St. Louis, Missouri; hospital personnel, other than the two physicians already mentioned above, who were involved in the decedent’s initial treatment in Clinton County; and personnel from the three Clinton County ambulance services, the two Clinton County fire departments, and the Clinton County auto body repair shop who were involved in responding to the accident. There is no perfect equation for determining whether access to potential witnesses is easier in one county than in another, but if, in Dawdy, Macoupin County provided easier access to witnesses than Madison County, then we can certainly say the same of Clinton County vis-á-vis St. Clair County in this case. Here, in contrast to Dawdy, a significantly larger proportion of the potential witnesses resides in the transferee county, and like Dawdy, the potential witnesses appear, on the whole, to reside closer to the transferee county than to the county where suit was filed. It is true that two potential witnesses reside in the county where suit was filed, but the St. Clair County residency of plaintiff’s investigator should be heavily discounted since plaintiff hired the investigator after the accident to perform services on her behalf, presumably in contemplation of litigation. See, e.g., Bland v. Norfolk & Western Ry. Co., 116 Ill. 2d 217, 227 (1987) (noting that undue weight should not be given to the location of a plaintiffs treating physician or expert since “[t]o do so would allow a plaintiff to easily frustrate the forum non conveniens principle by selecting as a witness a treating physician or expert in what would, in reality, be an inconvenient forum”). More importantly, the fact two potential witnesses reside in St. Clair County is relatively inconsequential when considered in conjunction with the residencies of all the other potential witnesses. The majority also contradicts Dawdy’s discussion of other practical considerations relevant to the forum non conveniens analysis. Specifically, the majority ignores our refusal in Dawdy to “accept the contention that trial in an adjacent county is conclusively not inconvenient for a defendant” (Dawdy, 207 Ill. 2d at 180), stating that it “discernís] no inconvenience for the defendants to try this case in St. Clair County when Clinton and St. Clair Counties are adjacent, and travel distances for likely witnesses are minimally different” (219 Ill. 2d at 450). The fact the counties are adjacent to one another is, in itself, irrelevant. Their locations factor into the present forum non conveniens analysis only insofar as they relate to the ease of access to the potential witnesses, which, as discussed above, favors Clinton County. In addition to disregarding Dawdy’s analysis of the private interest forum non conveniens factors, the majority also departs from Dawdy’s analysis of the public interest factors. In Dawdy, with respect to the local interests in deciding the controversy, we declined to attach dispositive significance to the fact the corporate defendant did business in the county where the lawsuit was filed. Dawdy, 207 Ill. 2d at 182 (“the fact that the defendant conducts business within Madison County is not a dispositive factor in this case”). That, however, is precisely what the majority does here. The majority observes that “Norfolk *** has its registered agent for service located in [St. Clair County]” and that “Norfolk railroad tracks traverse all of St. Clair County.” 219 Ill. 2d at 451. According to the majority, “St. Clair County has as much interest in deciding a controversy involving one of its residents who operates trains in its county as does Clinton County. This is particularly true when, as here, the defendant railroad maintains similar rural crossings in St. Clair County and this same railway line bisects all of St. Clair County.” 219 Ill. 2d at 451. This reasoning is misguided. The mere fact Norfolk does business in St. Clair County is greatly outweighed by other considerations far more relevant to evaluating the nature and extent of each county’s local interest in this case. As mentioned, in evaluating this factor in Dawdy, we found it significant that the accident occurred in the transferee county; that the plaintiff did not reside in the county where suit was filed; that the individual defendant did not reside in the county where suit was filed; that the individual defendant did reside in the transferee county; that the witnesses were, in general, unconnected to the county where suit was filed; and that some of the witnesses resided in the transferee county. See Dawdy, 207 Ill. 2d at 183. We placed particular emphasis on the fact the accident occurred in the transferee county. Dawdy, 207 Ill. 2d at 183 (“Most significantly, the fact that the accident occurred in Macoupin County gives the action a local interest”). In this case, as in Dawdy, the accident occurred in the transferee county. Moreover, the plaintiff and the individual defendants do not reside in the county where suit was filed. As for the potential witnesses, they appear, on the whole, to reside closer to the transferee county than to the county where suit was filed, and a larger proportion of them actually resides in the transferee county than was the case in Dawdy. The only distinction between this case and Dawdy in terms of the considerations in question is that, here, none of the individual defendants reside in the transferee county. However, the significance of this distinction is offset by the fact that plaintiff, unlike the plaintiff in Dawdy, is a resident of the transferee county. In Dawdy, the plaintiff was a resident of Greene County, suit was filed in Madison County, and the defendants wished to transfer venue to Macoupin County. Dawdy, 207 Ill. 2d at 169-70. Here, plaintiff resides in Clinton County, suit was filed in St. Clair County, and defendants wish to transfer venue to Clinton County, plaintiff’s county of residence. In sum, based on the very same considerations we took into account in evaluating the nature and extent of the local interests at play in Dawdy, it is clear that the controversy at issue here is local to Clinton County, and that Clinton County has a strong interest in resolving it. The majority unduly emphasizes the fact that Norfolk does business in St. Clair County to the exclusion of these other, more important considerations. I would briefly note that whether it is appropriate to impose jury duty on the residents of a county is related to the strength of a county’s local interest in a controversy. See, e.g., Dawdy, 207 Ill. 2d at 183. The majority finds it unproblematic that “St. Clair County residents will bear the burden of jury duty and trial expense” in this case. 219 Ill. 2d at 451. However, because plaintiff’s action did not arise in, and has little relation to, St. Clair County, it would be unfair to burden St. Clair County residents with jury duty in this matter. Clinton County, on the contrary, has a strong local interest in the controversy, and it would be entirely appropriate for Clinton County residents to serve as jurors. Finally, in assessing court congestion, the majority fails to examine the statistical criteria we considered in Dawdy and instead focuses solely on the circuit court judge’s assessment of the St. Clair County circuit court’s docket. 219 Ill. 2d at 451-52. In Dawdy, we looked to the overall number of pending jury actions for damages over $50,000 and the time to verdict for such actions in determining that Madison County’s docket was significantly more congested than that of Macoupin County. Dawdy, 207 Ill. 2d at 181. Here, the 2000 annual report of the Administrative Office of the Illinois Courts, which defendants called to the circuit court’s attention, reveals that, in 2000, there were 423 jury actions for damages in excess of $50,000 pending in St. Clair County, but only 37 comparable actions pending in Clinton County. Administrative Office of the Illinois Courts, 2000 Annual Report of the Illinois Courts, Statistical Summary 19, 28. Moreover, the average time between filing and verdict in such cases was 31.9 months in St. Clair County, but only 18 months in Clinton County. 2000 Annual Report of the Illinois Courts, Statistical Summary 56. The majority offers no account of these statistics, content simply to state that the St. Clair County circuit court “specifically noted that it would have no difficulty trying this case in a timely manner.” 219 Ill. 2d at 451. In support of this rationale, the majority cites Boner v. Peabody Coal Co. for the proposition that a circuit court is in a better position than a reviewing court to assess the burdens on its own docket. 219 Ill. 2d at 451, citing Boner, 142 Ill. 2d at 538-39. This may be so, but it does not mean that a reviewing court should turn a blind eye to objective data in weighing one venue’s congestion against another’s. Boner, in fact, did consider court data in arriving at its conclusion that court congestion did not necessitate transferring the action at issue to Gallatin County. Boner, 142 Ill. 2d at 539 (“Moreover, the 1989 statistics favor St. Clair County rather than Gallatin County”). Thus, while “[t]he court congestion factor, by itself, is relatively insignificant” (Dawdy, 207 Ill. 2d at 181), and is not alone sufficient to justify transfer (Dawdy, 207 Ill. 2d at 181), in this case, this factor does weigh in favor of Clinton County over St. Clair County. II. Guerine, Dawdy, and the Instant Case It is clear, based on the foregoing, that the majority wishes to distance this court from the reasoning we applied in Dawdy. I cannot endorse this approach, as it erroneously suggests that Dawdy is irreconcilable with Guerine, when, in fact, Dawdy and Guerine can be applied consistently to govern the outcome of this case. The lawsuit at issue in Guerine arose from a car accident involving the individual defendant and the decedent. Guerine, 198 Ill. 2d at 512. A boat trailer broke away from the individual defendant’s vehicle, crossed into oncoming traffic, and struck the decedent’s vehicle, killing her. Guerine, 198 Ill. 2d at 512. The plaintiff bank, as the executor of the decedent’s estate, and the decedent’s two minor sons, by their father, the decedent’s husband, filed suit in Cook County against the individual defendant for negligence and against the manufacturer of the boat trailer for product liability. Guerine, 198 Ill. 2d at 513. The individual defendant resided in Cook County, the corporate defendant was headquartered in Mishawaka, Indiana, and the accident had occurred in De Kalb County. Guerine, 198 Ill. 2d at 512-13, 524. The circuit court allowed the corporate defendant’s motion to transfer the action out of Cook County, and the appellate court denied the plaintiffs leave to appeal. Guerine, 198 Ill. 2d at 513-14. In reversing the judgment of the circuit court, we held “that a trial court abuses its discretion in granting an intrastate forum non conveniens motion to transfer venue where *** the potential trial witnesses are scattered among several counties, including the plaintiff’s chosen forum, and no single county enjoys a predominant connection to the litigation.” Guerine, 198 Ill. 2d at 526. The potential witnesses were “scattered among several counties” because they resided in Cook County, De Kalb County, Du Page County, Kane County, and Winnebago County. See Guerine, 198 Ill. 2d at 524-25. There were various reasons why no single county enjoyed “a predominant connection to the litigation,” as reflected in our analysis of the relevant private and public interest factors. See Guerine, 198 Ill. 2d at 524-25. While the accident occurred in De Kalb County, and thus gave the plaintiffs’ negligence claim against the individual defendant a “local flavor,” the plaintiffs’ product liability claim against the corporate defendant was “less localized.” Guerine, 198 Ill. 2d at 525. Moreover, despite the accident’s occurrence in De Kalb County, Cook County clearly was more accessible to the parties. Guerine, 198 Ill. 2d at 524. The individual defendant resided there and never filed a forum non conveniens motion, and any representatives of the corporate defendant would have had to travel through Cook County on their way to either De Kalb County or Kane County, the other potential venues. Guerine, 198 Ill. 2d at 524. In addition, as we recognized in our holding, the potential witnesses were disbursed among several counties, including the county where the plaintiffs filed suit. Guerine, 198 Ill. 2d at 524-25. We distinguished Guerine in Bawdy. There we observed that, unlike in Guerine, none of the witnesses resided in the county where suit was filed, and the transferee county had a predominant connection to the litigation. Bawdy, 207 Ill. 2d at 184 (“In this case, however, none of the witnesses reside in Madison County and Macoupin County has a predominant connection to this case”). It is significant that, in addition to the fact that none of the potential witnesses resided in the county where suit was filed, on the whole they resided closer to the transferee county. Dawdy, 207 Ill. 2d at 178. Furthermore, while we did not explicitly elaborate on why the transferee county had a “predominant connection” to the case, our reasons were implicit in our analysis of the private and public interest factors. Unlike the individual defendant in Guerine, the individual defendant in Bawdy was a resident of the transferee county. See Dawdy, 207 Ill. 2d at 170, 183. In addition, unlike the mixed negligence-product liability action in Guerine, all of the plaintiff’s negligence claims in Bawdy related to the specific accident at issue, which occurred in the transferee county. See Dawdy, 207 Ill. 2d at 169, 183. Moreover, the potential witnesses in Bawdy were more closely linked to the transferee county than in Guerine. See Dawdy, 207 Ill. 2d at 178. The grounds on which the majority distinguishes Bawdy from the instant case are unpersuasive and likely to cause confusion. First, the majority asserts that “in Bawdy, none of the witnesses resided in the plaintiffs chosen forum.” 219 Ill. 2d at 453. It is true that, in this case, two potential witnesses are residents of the county where suit was filed, but this distinction should make no difference in the forum non conveniens analysis. As mentioned, the fact two potential witnesses reside in St. Clair County is relatively inconsequential when considered along with the residencies of all the other potential witnesses. Here, as in Dawdy, the potential witnesses appear, on the whole, to reside closer to the transferee county than to the county where suit was filed. Second, the majority states that “in Dawdy, the possibility of a jury view of the accident scene was a practical consideration.” 219 Ill. 2d at 453. As discussed, the possibility of a jury view of the accident scene is likewise a practical consideration in this case. Third, the majority notes that “in Dawdy, the defendant railroad was attempting to transfer the cause to the defendant employee’s county of residence.” 219 Ill. 2d at 453. As with the majority’s statement regarding the residencies of the potential witnesses, this observation ignores the broader context of the forum non conveniens analysis. The residency of a defendant is most relevant to two of the forum non conveniens factors: the interest in deciding localized controversies locally, and the convenience of the parties. As to the former factor, even though none of the individual defendants reside in the transferee county, plaintiff does, thereby offsetting the effect this distinction would have in this case on the extent of the transferee county’s local interest in the controversy. As to the convenience of the parties, the majority does not engage in a separate analysis of this factor, other than to state the obvious proposition that a defendant cannot prevail on a motion to transfer by simply asserting that the plaintiff’s chosen venue is inconvenient to the plaintiff (219 Ill. 2d at 448), and to conclude that defendants failed to show they would be inconvenienced by a trial in St. Clair County (219 Ill. 2d at 450). The fact of the matter is that plaintiff will suffer no inconvenience by remaining in Clinton County to litigate this case, and defendants will be equally inconvenienced by trial in Clinton County or St. Clair County. Clinton County is plaintiffs county of residence, so even though she has indicated St. Clair County is not an inconvenient venue by filing suit there, Clinton County is similarly not inconvenient. The individual defendants reside in Macon County; Patoka, Indiana; and Hazelton, Indiana, and will have to travel comparably long distances to attend trial in either Clinton County or St. Clair County. Balancing these considerations, the convenience of the parties does not strongly favor one venue over the other. Thus, the fact that transferring this case would not, unlike in Dowdy, place it in the county of residence of one of the defendants has no bearing on this factor of the forum non conveniens analysis. III. Application of Forum Non Conveniens Factors Turning explicitly to the facts of this case, it is clear the doctrine of forum non conveniens warrants the transfer of plaintiffs lawsuit to Clinton County. Here, plaintiff is not a resident of St. Clair County, and the accident did not occur there. As a result, plaintiffs choice of St. Clair County as a venue for her lawsuit is entitled to less deference than would otherwise be appropriate. See Guerine, 198 Ill. 2d at 517; Dawdy, 207 Ill. 2d at 173-74. On balance, the private interest factors weigh in favor of transfer. Plaintiff will suffer no inconvenience by litigating this case in Clinton County or St. Clair County, and the individual defendants will be equally inconvenienced by trial in either county. On the whole, the potential witnesses appear to reside closer to Clinton County than to St. Clair County, with a significant proportion of them actually residing in Clinton County. Furthermore, viewing the accident site might be deemed appropriate in this case at some future time, and the accident site is located in Clinton County. The fact the parties’ attorneys’ offices are located in St. Clair County is entitled to little weight. In addition, the public interest factors weigh strongly in favor of transfer. It is apparent that the controversy at issue here is local to Clinton County, and that Clinton County has a strong interest in resolving it. The accident occurred in Clinton County, plaintiff is a resident of Clinton County, and the potential witnesses are more closely connected to Clinton County than to St. Clair County. Belatedly, because of Clinton County’s strong local interest in the litigation and St. Clair County’s comparatively weak interest, it would not be fair to obligate St. Clair County residents to serve as jurors in this matter. Finally, court statistics clearly show greater congestion in St. Clair County than in Clinton County. For these reasons, I would reverse the judgment of the appellate court, which affirmed the circuit court’s denial of defendants’ motion to transfer venue, and order this cause transferred from St. Clair County to Clinton County. CHIEF JUSTICE THOMAS and JUSTICE KARMEIER join in this dissent.